**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| Federal Deposit Insurance Corporation as Receiver for AmTrust Bank, | |
| Plaintiff, | No. |
| | Honorable |
| v. | Magistrate |
| Fairway Independent Mortgage Corporation, | |
| Defendant. | |

## <u>COMPLAINT</u>

Plaintiff the Federal Deposit Insurance Corporation as Receiver for AmTrust

Bank ("FDIC-R" or "Plaintiff") sues Fairway Independent Mortgage Corporation

("Fairway" or "Defendant"), and alleges as follows:

## INTRODUCTION

1.      This action is brought against Fairway for its breach of two Master Correspondent Loan Purchase Agreements pursuant to which Fairway sold or transferred mortgage loans to AmTrust Bank, formerly known as Ohio Savings Bank ("AmTrust").

2.      Fairway breached its representations and warranties in the Master Correspondent Loan Purchase Agreements by providing AmTrust incomplete, inaccurate, false or misleading information regarding seven mortgage loans sold or transferred to AmTrust.  The FDIC-R files this action to recover the losses caused by Fairway's breaches.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 12 U.S.C. § 1819(b)(2)(A), because the FDIC-R is a party and therefore this controversy arises under the laws of the United States.

4.      This Court has personal jurisdiction over Fairway because Fairway consented to the jurisdiction of Ohio by appointing an agent for service of process in Ohio and purposefully availing itself of the privilege of conducting activities within Ohio. The exercise of personal jurisdiction over Fairway in this action would be reasonable.

5.      This Court also has personal jurisdiction over Fairway pursuant to Ohio's long-arm statute, ORC § 2307.382, because Fairway is licensed to and is transacting business in Ohio; Fairway contracted to supply services in Ohio; and Fairway caused injury to AmTrust in Ohio.

6.      This Court also has personal jurisdiction over Fairway pursuant to ORC § 2307.39 because Fairway agreed that the rights and duties under the agreements at issue would be governed by the laws of Ohio and submitted to the jurisdiction and venue in any Federal court located in the City of Cleveland, Ohio. ORC § 2307.39 is applicable to this controversy because the agreements at issue were not contracts for labor or personal services, or consumer transactions.

7.      The basis for venue in the Northern District of Ohio under 28 U.S.C. § 1391 is that Fairway is a resident of the state of Ohio, as it is subject to this Court's personal jurisdiction in this action.  See 28 USC § 1391(c)(2).  In addition, a substantial part of the events or omissions giving rise to the claim occurred in this district because, among other things, the agreements at issue were entered into by AmTrust in this district, the place of performance for all or some of the obligations sued upon was in this district, and AmTrust suffered damages in this district. Further, venue is based on the forum selection clause agreed to by Fairway in the agreements at issue.

## THE PARTIES

8.      The Federal Deposit Insurance Corporation ("FDIC") is a corporation and instrumentality of the United States of America, established under the Federal Deposit Insurance Act, 12 U.S.C. §§ 1811-1835(a), and is authorized to be appointed as receiver for insured depository institutions that have failed.  AmTrust was a federally chartered savings bank with its principal place of business in Cleveland, Ohio.  AmTrust was in the business of, among other things, buying and/or funding mortgage loans.  On December 4, 2009, the Office of Thrift Supervision closed AmTrust and appointed the FDIC as Receiver pursuant to 12 U.S.C. §§ 1464(d)(2)(A) and 1821(c)(5).  The FDIC as Receiver is empowered to sue and complain in any court of law pursuant to 12 U.S.C. § 1819, and pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC-R, by operation of law, succeeded to all of AmTrust's claims.  In this action, the FDIC-R seeks to recover damages resulting from the conduct of the Defendant.  The FDIC-R owns the subject claims and has standing to prosecute this action as AmTrust's receiver.

9.      Fairway is a Wisconsin corporation with its principal place of business in Madison, Wisconsin. Defendant is engaged in the business of, among other things, originating, processing, packaging, submitting for funding, selling and/or transferring loans secured by real property, and is registered and licensed to

do business in Ohio.  In the agreements at issue in this matter, Defendant

consented to the personal jurisdiction of this Court.

### THE 1997 AGREEMENT

10.    In 1997, AmTrust and Fairway entered into a written contract titled

Correspondent Master Loan Purchase Agreement (hereinafter "1997 Agreement").

The 1997 Agreement sets forth terms and conditions, pursuant to which Fairway

would sell and/or submit and AmTrust would purchase and/or fund mortgage

loans.

11.    Fairway made the following representations and warranties to

AmTrust with respect to each loan submitted under the 1997 Agreement:

> **V.    REPRESENTATIONS AND WARRANTIES**
> 5.1 Representations and Warranties; Mortgage Loan.
> [Fairway] represents and warrants to [AmTrust], as to
> each Mortgage Loan to be purchased by [AmTrust]
> pursuant hereto (as of the Closing Date and the Purchase
> Date thereof unless otherwise stated), as follows:
> > (a) The information contained in the Underwriting
> > Package is complete, true and correct.[1]
> > …

---

[1] The 1997 Agreement provides the following definition of "Underwriting Package": "'Underwriting Package' shall mean, with respect to a Mortgage Loan to be purchased under a particular Mortgage Loan Program, the items specified therefore in [AmTrust's] underwriting standards for such Mortgage Loan Program, including without limitation, fully completed and signed loan applications, credit reports, deposit and employment verifications, evidence of income, appraisal, location survey, Federal Truth-in-Lending Act ("TIL") and Real Estate Settlement Procedures Act ("RESPA") disclosure documents (acknowledged by Mortgagor), [Fairway's] approval sheet, and all Loan Documents then available, if any."

(c) [Fairway] has not impaired, altered or modified any Mortgage Loan Document in any respect.[2]

…

(p) [Fairway] has no knowledge of any circumstance or condition with respect to the Mortgage, the Mortgaged Property, the Mortgagor or the Mortgagor's credit standing that might be reasonably expected to cause FNMA, FHLMC or other institutional mortgage loan purchasers to regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent or adversely affect the value or marketability of the Mortgage Loan or the Mortgaged Property.

5.2  Representations and Warranties; Correspondent. [Fairway] represents and warrants to [AmTrust], as of the date of this Agreement, and on each Closing Date and Purchase Date, as follows:

…

(j) Neither this Agreement nor any statement, report or other document furnished or to be furnished pursuant to this Agreement or in connection with the transactions contemplated hereby contains any material untrue statement of fact or omits to state a material fact necessary to make the statements contained herein or therein not misleading.

---

[2] The 1997 Agreement provides the following definition of "Mortgage Loan Documents": "the documents creating, evidencing or securing a Mortgage Loan, including without limitation a Mortgage Note, Mortgage, security agreements, appraisals, credit reports, loan applications, loan settlement statements, title insurance policy (or other title evidence acceptable to [AmTrust]), hazard, flood and liability insurance, correspondence and other documents pertaining thereto."

12.     Regarding Fairway's repurchase and indemnification obligations, the 1997 Agreement provides:

> 6.1  Repurchase.
>
> (a) Upon … discovery by [AmTrust] of a breach of any of the representations and warranties contained in Article V … then, within sixty (60) days after the earlier of its discovery or its receipt of notice of any such event or occurrence, [Fairway] shall repurchase said Mortgage Loan at a price equal to the higher of the purchase price or 100% of par, with adjustments for accrued interest, prepayments and any comparable items at the time of repurchase, plus attorney's fees, legal expenses, court costs or other expenses that may have been incurred by [AmTrust] in connection with the Mortgage Loan.
>
> …
> 7.10 [Fairway] shall indemnify and hold [AmTrust] harmless against any loss, damages, penalties, fines, forfeitures, legal fees and related costs, judgments and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from, (a) a breach of any representation or warranty of [Fairway] contained in this Agreement or (b) any act or omission of [Fairway] in originating or servicing any Mortgage Loan, including, without limitation, incomplete or erroneous loan documentation, fraud by [Fairway] in the origination of the Mortgage Loan, improper escrow disbursements or misapplied payments or claims not covered by insurance, or violation of applicable law or regulation.

13.     Pursuant to the provisions contained in the 1997 Agreement, Fairway sold and/or submitted for funding to AmTrust four of the loans - the Held Loan, Jennings Loans, and Recht Loan - that are the subject of this action.

## THE 2007 AGREEMENT

14.     In 2007, AmTrust and Fairway entered into a written contract titled

Master Correspondent Loan Purchase Agreement which incorporated by reference

AmTrust's Seller's Guide (hereinafter "2007 Agreement").  The 2007 Agreement

sets forth terms and conditions, pursuant to which Fairway would sell and/or

submit and AmTrust would purchase and/or fund mortgage loans.

15.     The 2007 Agreement incorporated by reference AmTrust's Seller's

Guide, as follows:

### I.     INCORPORATION OF SELLER'S GUIDE ON GEMSTONE

1.1. All provisions contained in [AmTrust's] Seller's Guide
located on [AmTrust's] Gemstone web-site, as amended or
revised from time to time, are hereby incorporated by reference
into this Agreement and shall be binding upon the parties. Each
change to the Seller's Guide is effective when placed on
Gemstone or sent to [Fairway], whichever first occurs, and is
deemed accepted by [Fairway] by its use of Gemstone
thereafter.  Specific reference in this Agreement to particular
provisions of the Seller's Guide or Gemstone Seller's Guide
and not to other provisions does not mean that those provisions
of the Seller's Guide or Gemstone not specifically cited herein
are not applicable. All terms not otherwise defined herein shall
have the same meaning as such terms have in the Seller's Guide
unless the context clearly requires otherwise.

1.2. [Fairway] acknowledges that they have been provided
access to [AmTrust's] Gemstone web-site and the Seller's
Guide thereon prior to execution of this agreement and agrees
to be bound by and comply with all applicable provisions of the
Seller's Guide as amended, supplemented, or revised from time
to time by [AmTrust].

16.  In the 2007 Agreement, Fairway made the following representations and warranties to AmTrust with respect to each loan submitted under the 2007 Agreement:

## VII.  REPRESENTATIONS AND WARRANTIES

7.1 Representations and Warranties; Mortgage Loan. [Fairway] hereby incorporates by reference all representations and warranties set forth in the Seller's Guide and in the Agreement (collectively the "Reps") and represents and warrants to [AmTrust], as to each Mortgage Loan to be purchased by [AmTrust] pursuant hereto (as of the Closing Date and the Purchase Date thereof unless otherwise stated), that such Mortgage Loan complies in all respects with the Reps as then set forth in this Agreement and the Seller's Guide at the time of the purchase of such Mortgage Loan by [AmTrust], which includes any and all additional representations and warranties added to the Seller's Guide after the effective date of this Agreement.
…
7.2 Representations and warranties; Correspondent. [Fairway] represents and warrants to [AmTrust], as of the date of this Agreement, and on each Closing Date and Purchase Date, as follows:
…
(k)  Neither this Agreement nor any statement, report or other document furnished or to be furnished pursuant to this Agreement or in connection with the transactions contemplated hereby contains any material untrue statement of fact or omits to state a material fact necessary to make the statements contained herein or therein not misleading.

17.     Pursuant to the incorporated Seller's Guide, Fairway made the

following additional representations and warranties:

1.3 Representations and Warranties

> 1.3.1  [Fairway] has complied with all applicable
> requirements in the origination of the mortgage loan as
> set forth in this Seller's Guide and the Agreement.
>
> 1.3.2  The information contained in the underwriting
> package or otherwise used to underwrite and approve the
> mortgage loan is complete, true and correct.
> …
> 1.3.4  [Fairway] has not taken any action, or failed to
> take any action that has impaired, altered, or modified
> any Mortgage Loan Document in any respect.[3]
> …
> 1.3.9  The Mortgage Loan and the Mortgage Loan
> Documents comply with all Fannie Mae and FREDDIE
> MAC underwriting standards and documentation
> requirements, except as otherwise expressly provided by
> AmTrust's specific Loan Programs as set forth on
> Gemstone.
> …
> 1.3.17  [Fairway] has no knowledge of any circumstance
> or condition with respect to the Mortgage, the Mortgaged
> Property, the Mortgagor or the Mortgagor's credit
> standing that might be reasonably expected to cause
> Fannie Mae, FREDDIE MAC or other institutional
> mortgage loan [purchasers] to regard the Mortgage Loan
> as an unacceptable investment, cause the Mortgage Loan
> to become delinquent or adversely affect the value or
> marketability of the Mortgage Loan or the Mortgaged
> Property.

---

[3] "Mortgage Loan Documents" is defined the same as in the 1997 Agreement.

18.     Section 8.3 of the 2007 Agreement further confirmed Fairway was responsible for the truth, accuracy, and completeness of all loan application documents:

> 8.3 It is contemplated that certain loans sold hereunder may be underwritten by [AmTrust] or [AmTrust's] approved contract underwriter before purchase. In those cases only, [Fairway] is relieved of its duties and obligations regarding the underwriting and any obligation to repurchase due solely to underwriting errors or improper underwriting decisions, unless such underwriting errors or improper underwriting decisions are based in whole or in part upon (i) incomplete or inaccurate information, false statements, or fraudulent underwriting or loan application documentation provided by [Fairway] or any other party providing information used in the loan processing or loan application underwriting process, or (ii) inaccurate Reps. *The accuracy, completeness, validity and authenticity of all loan application documents provided to, or required to be provided to, [AmTrust] to conclude the underwriting decision are exclusively and solely the responsibility of [Fairway] as set forth in the Reps upon which [AmTrust] is intended to rely in originating Mortgage Loans. [Fairway] remains responsible to insure that all conditions called for in the underwriting approved by [AmTrust] are satisfied and that all information submitted in the loan application and throughout the underwriting and funding process is true, correct and complete.*
> (Emphasis added.)

19.     Regarding Fairway's repurchase and indemnification obligations, the

2007 Agreement provides:

8.1     Repurchase.
        (a) [Fairway] agrees that upon written request [Fairway]
        shall repurchase, at the Repurchase Price as set forth in
        the Seller's Guide, any Mortgage Loan sold to [AmTrust]
        pursuant to this Agreement for any of the following
        reasons:
                (i) [AmTrust] determines that [Fairway] failed to
                deliver to [AmTrust] the proper Mortgage Loan
                Documents pursuant to this Agreement and the
                Seller's Guide.
                (ii) [AmTrust] determines there is any evidence of
                fraud in the origination and/or closing of the
                Mortgage Loan by x) [Fairway] or its employees,
                directors, officers, agents, vendors, service
                providers and independent contractors (including
                without limitation, sellers or brokers of [Fairway]
                and settlement agents); or y) the Borrower.
                …
                (iv)    [AmTrust] determines that [Fairway] failed
                to observe or perform, or breached, in any material
                respect any of the representations, warranties or
                agreements contained in this Agreement, the
                Seller's Guide, or Agency guidelines with respect
                to a particular Mortgage Loan.
                …
9.4
                (a) [Fairway] hereby agrees to indemnify and hold
                harmless [AmTrust], its successors and/or assigns, from
                any and all losses, liabilities, claims, damages, or costs of
                any nature, including without limitation attorneys' fees
                and costs, and actions suffered or incurred by [AmTrust]
                which arise out of, result from, or relate to: i) The breach
                by [Fairway] of any covenant, condition, term,
                obligation, representation or warranty contained in this
                Agreement, the Seller's Guide, or in any written

12

statement, certificate, or Mortgage Loan Document furnished by [Fairway] pursuant to this Agreement or the Seller's Guide; or ii) any act or omission of [Fairway] or any employee, vendor, service provider or agent of [Fairway] which adversely affects any Mortgage Loan registered with and funded by [AmTrust] hereunder. This indemnification shall survive any termination or cancellation of this Agreement.

(b)  Without limiting the foregoing paragraph, [Fairway's] obligation to indemnify [AmTrust] under this Agreement shall include reimbursing [AmTrust] for the costs and expenses associated with [AmTrust's] efforts to require [Fairway] to repurchase Mortgage Loans. …

20.    Pursuant to the provisions contained in the 2007 Agreement, Fairway sold and/or submitted for funding to AmTrust three of the loans - the Burwood Loan, Frederick Loan, and Mullins Loan - that are the subject of this action.

## COUNT I
## BREACH OF CONTRACT
## (HELD LOAN)

21.    Plaintiff realleges paragraphs 1 through 20, as if fully set forth herein.

22.    Pursuant to the 1997 Agreement, in or about February 2006, AmTrust purchased and/or funded a $410,200 loan to borrower Joshua Held, secured by property located in Gilbert, Arizona (the "Held Loan").

23.    AmTrust purchased and/or funded the Held Loan, pursuant to the terms of the 1997 Agreement, for valuable consideration and in reliance upon the representations and warranties made by Fairway in the 1997 Agreement.

24.     In breach of the representations and warranties that Fairway made to AmTrust in the 1997 Agreement, the information contained in the Held Loan Underwriting Package was incomplete, untrue, and incorrect, by, among other things: misrepresenting the borrower's income.

25.     The Held Loan defaulted.

26.     Starting on or about June 29, 2015, Plaintiff demanded that Fairway perform its obligations under the 1997 Agreement with regard to the Held Loan, including but not limited to its indemnification obligation.  Fairway failed and refused to indemnify Plaintiff for losses relating to the Held Loan or otherwise perform under the 1997 Agreement.

27.     Fairway failed to perform its obligations under the 1997 Agreement with respect to the Held Loan.

28.     AmTrust and the FDIC-R performed all of their obligations to Fairway under the 1997 Agreement with respect to the Held Loan, except any obligations AmTrust and the FDIC-R have been prevented or excused from performing by the acts and breaches of Fairway.

29.     As a result of Fairway's breach of the 1997 Agreement, including, but not limited to, Fairway's failure to perform its obligations under the 1997 Agreement, damages were suffered in an amount to be proven at trial.  Thus, the

FDIC-R is entitled to damages, plus interest, and attorneys' fees and costs under the 1997 Agreement.

## COUNT II
## BREACH OF CONTRACT
## (JENNINGS LOANS)

30.     Plaintiff realleges paragraphs 1 through 20, as if fully set forth herein.

31.     Pursuant to the 1997 Agreement, in or about December 2006, AmTrust purchased and/or funded two loans totaling $474,900 (a first mortgage of $379,900 and a second mortgage of $95,000) to borrower John Jennings, secured by property located in Berkeley, California (the "Jennings Loans").

32.     AmTrust purchased and/or funded the Jennings Loans, pursuant to the terms of the 1997 Agreement, for valuable consideration and in reliance upon the representations and warranties made by Fairway in the 1997 Agreement.

33.     In breach of the representations and warranties that Fairway made to AmTrust in the 1997 Agreement, the information contained in the Jennings Loans Underwriting Package was incomplete, untrue, and incorrect, by, among other things: (1) misrepresenting the borrower's income; (2) misrepresenting the borrower's employment; and (3) misrepresenting the borrower's assets.

34.     The Jennings Loans defaulted.

35.     Starting on or about August 4, 2015, Plaintiff demanded that Fairway perform its obligations under the 1997 Agreement with regard to the Jennings

Loans, including but not limited to its indemnification obligation. Fairway failed and refused to indemnify Plaintiff for losses relating to the Jennings Loans or otherwise perform under the 1997 Agreement.

36.     Fairway failed to perform its obligations under the 1997 Agreement with respect to the Jennings Loans.

37.     AmTrust and the FDIC-R performed all of their obligations to Fairway under the 1997 Agreement with respect to the Jennings Loans, except any obligations AmTrust and the FDIC-R have been prevented or excused from performing by the acts and breaches of Fairway.

38.     As a result of Fairway's breach of the 1997 Agreement, including, but not limited to, its failure to perform its obligations under the 1997 Agreement, damages were suffered in an amount to be proven at trial. Thus, the FDIC-R is entitled to damages, plus interest, and attorneys' fees and costs under the 1997 Agreement.

**COUNT III**
**BREACH OF CONTRACT**
**(RECHT LOAN)**

39.     Plaintiff realleges paragraphs 1 through 20, as if fully set forth herein.

40.     Pursuant to the 1997 Agreement, in or about December 2005, AmTrust purchased and/or funded a $220,050 loan to borrower Frank Recht, secured by property located in Show Low, Arizona (the "Recht Loan").

16

41.     AmTrust purchased and/or funded the Recht Loan, pursuant to the terms of the 1997 Agreement, for valuable consideration and in reliance upon the representations and warranties made by Fairway in the 1997 Agreement.

42.     In breach of the representations and warranties that Fairway made to AmTrust in the 1997 Agreement, the information contained in the Recht Loan Underwriting Package was incomplete, untrue, and incorrect, by, among other things: misrepresenting the borrower's credit obligations.

43.     The Recht Loan defaulted.

44.     Starting on or about July 30, 2013, Plaintiff demanded that Fairway perform its obligations under the 1997 Agreement with regard to the Recht Loan, including but not limited to its indemnification obligation.  Fairway failed and refused to indemnify Plaintiff for losses relating to the Recht Loan or otherwise perform under the 1997 Agreement.

45.     Fairway failed to perform its obligations under the 1997 Agreement with respect to the Recht Loan.

46.     AmTrust and the FDIC-R performed all of their obligations to Fairway under the 1997 Agreement with respect to the Recht Loan, except any obligations AmTrust and the FDIC-R have been prevented or excused from performing by the acts and breaches of Fairway.

47.     As a result of Fairway's breach of the 1997 Agreement, including, but not limited to, Fairway's failure to perform its obligations under the 1997 Agreement, damages were suffered in an amount to be proven at trial.  Thus, the FDIC-R is entitled to damages, plus interest, and attorneys' fees and costs under the 1997 Agreement.

## COUNT IV
## BREACH OF CONTRACT
## (BURWOOD LOAN)

48.     Plaintiff realleges paragraphs 1 through 20, as if fully set forth herein.

49.     Pursuant to the 2007 Agreement, in or about March 2007, AmTrust purchased and/or funded a $139,500 loan to borrower Mathew Burwood, secured by property located in Phoenix, Arizona (the "Burwood Loan").

50.     AmTrust purchased and/or funded the Burwood Loan, pursuant to the terms of the 2007 Agreement, for valuable consideration and in reliance upon the representations and warranties made by Fairway in the 2007 Agreement.

51.     In breach of the representations and warranties that Fairway made to AmTrust in the 2007 Agreement, the information contained in the Burwood Loan Underwriting Package was incomplete, untrue, and incorrect, by, among other things: (1) misrepresenting the borrower's credit obligations; and (2) misrepresenting the nature of the transaction because the borrower was affiliated with and/or controlled by the property seller.

52.     The Burwood Loan defaulted.

53.     Starting on or about July 30, 2013, Plaintiff demanded that Fairway perform its obligations under the 2007 Agreement with regard to the Burwood Loan, including but not limited to its indemnification obligation.  Fairway failed and refused to indemnify Plaintiff for losses relating to the Burwood Loan or otherwise perform under the 2007 Agreement.

54.     Fairway failed to perform its obligations under the 2007 Agreement with respect to the Burwood Loan.

55.     AmTrust and the FDIC-R performed all of their obligations to Fairway under the 2007 Agreement with respect to the Burwood Loan, except any obligations AmTrust and the FDIC-R have been prevented or excused from performing by the acts and breaches of Fairway.

56.     As a result of Fairway's breach of the 2007 Agreement, including, but not limited to, its failure to perform its obligations under the 2007 Agreement, damages were suffered in an amount to be proven at trial.  Thus, the FDIC-R is entitled to damages, plus interest, and attorneys' fees and costs under the 2007 Agreement.

## COUNT V
## BREACH OF CONTRACT
## (FREDERICK LOAN)

57.     Plaintiff realleges paragraphs 1 through 20, as if fully set forth herein.

58.     Pursuant to the 2007 Agreement, in or about September 2007, AmTrust purchased and/or funded a $130,960 loan to borrower Richard Frederick, secured by property located in Miller Place, New York (the "Frederick Loan").

59.     AmTrust purchased and/or funded the Frederick Loan, pursuant to the terms of the 2007 Agreement, for valuable consideration and in reliance upon the representations and warranties made by Fairway in the 2007 Agreement.

60.     In breach of the representations and warranties that Fairway made to AmTrust in the 2007 Agreement, the information contained in the Frederick Loan Underwriting Package was incomplete, untrue, and incorrect, by, among other things: (1) misrepresenting the borrower's employment; and (2) misrepresenting the borrower's income.

61.     The Frederick Loan defaulted.

62.     Starting on or about July 30, 2013, Plaintiff demanded that Fairway perform its obligations under the 2007 Agreement with regard to the Frederick Loan, including but not limited to its indemnification obligation.  Fairway failed and refused to indemnify Plaintiff for losses relating to the Frederick Loan or otherwise perform under the 2007 Agreement.

63.     Fairway failed to perform its obligations under the 2007 Agreement with respect to the Frederick Loan.

64.     AmTrust and the FDIC-R performed all of their obligations to Fairway under the 2007 Agreement with respect to the Frederick Loan, except any obligations AmTrust and the FDIC-R have been prevented or excused from performing by the acts and breaches of Fairway.

65.     As a result of Fairway's breach of the 2007 Agreement, including, but not limited to, its failure to perform its obligations under the 2007 Agreement, damages were suffered in an amount to be proven at trial.  Thus, the FDIC-R is entitled to damages, plus interest, and attorneys' fees and costs under the 2007 Agreement.

**COUNT VI**
**BREACH OF CONTRACT**
**(MULLINS LOAN)**

66.     Plaintiff realleges paragraphs 1 through 20, as if fully set forth herein.

67.     Pursuant to the 2007 Agreement, in or about June 2007, AmTrust purchased and/or funded an $828,750 loan to borrower William Mullins, secured by property located in Scottsdale, Arizona (the "Mullins Loan").

68.     AmTrust purchased and/or funded the Mullins Loan, pursuant to the terms of the 2007 Agreement, for valuable consideration and in reliance upon the representations and warranties made by Fairway in the 2007 Agreement.

69.     In breach of the representations and warranties that Fairway made to AmTrust in the 2007 Agreement, the information contained in the Mullins Loan

Underwriting Package was incomplete, untrue, and incorrect, by, among other things: (1) misrepresenting the borrower's debt obligations, including two undisclosed mortgages originated by the same loan officer at Fairway; and (2) misrepresenting the borrower's income.

70.     The Mullins Loan defaulted.

71.     Starting on or about September 28, 2015, Plaintiff demanded that Fairway perform its obligations under the 2007 Agreement with regard to the Mullins Loan, including but not limited to its indemnification obligation.  Fairway failed and refused to indemnify Plaintiff for losses relating to the Mullins Loan or otherwise perform under the 2007 Agreement.

72.     Fairway failed to perform its obligations under the 2007 Agreement with respect to the Mullins Loan.

73.     AmTrust and the FDIC-R performed all of their obligations to Fairway under the 2007 Agreement with respect to the Mullins Loan, except any obligations AmTrust and the FDIC-R have been prevented or excused from performing by the acts and breaches of Fairway.

74.     As a result of Fairway's breach of the 2007 Agreement, including, but not limited to, its failure to perform its obligations under the 2007 Agreement, damages were suffered in an amount to be proven at trial.  Thus, the FDIC-R is

entitled to damages, plus interest, and attorneys' fees and costs under the 2007 Agreement.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, Federal Deposit Insurance Corporation as Receiver for AmTrust Bank respectfully requests that:

(A)    The Court find Defendant Fairway liable for its breaches of contract, and enter judgment for any and all remedies available under the contract or by operation of law including without limitation:  damages, attorney's fees, costs, expenses, interest, and other such relief the Court may deem appropriate under the circumstances.

(B)    The Court award costs and disbursements and order such other and further relief, including equitable relief, that is just and proper.


Date: December 2, 2015                    Respectfully submitted,

                                          **RJ LANDAU PARTNERS, PLLC**

                                          By:  /s/ Richard J. Landau
                                               Richard J. Landau (0088865)
                                               Attorneys for Plaintiff, Federal
                                               Deposit Insurance Corporation as
                                               Receiver for AmTrust Bank
                                               5340 Plymouth Rd., Suite 200
                                               Ann Arbor,  MI 48105
                                               (734) 865-1585
                                               rjlandau@rjlps.com